557 S.E.2d 385

**STATE of West Virginia ex rel. Ryan A. SUTTON, Petitioner,**

v.

**Honorable James P. MAZZONE, Judge of the Circuit Court of Ohio County, and Scott R. Smith, Prosecuting Attorney for Ohio County, Respondents.**

No. 29958.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 5, 2001.

Decided Dec. 7, 2001.

Mark A. Blevins, Esq., Assistant Public Defender, Wheeling, West Virginia, Attorney for Petitioner.

Honorable James P. Mazzone, respondent pro se.

Scott R. Smith, Esq., Prosecuting Attorney, William J. Ihlenfeld, II, Esq., Assistant Prosecuting Attorney, Stephen L. Vogrin, Esq., Assistant Prosecuting Attorney, Wheeling, West Virginia, Attorneys for Prosecuting Attorney.

PER CURIAM:

In this original proceeding in prohibition, the relator, Ryan A. Sutton, who has been charged with homicide, prays that this Court prohibit the trial judge, the judge of the Circuit Court of Ohio County, from compelling his attorney to produce certain information prior to trial. He also claims that the trial judge has improperly placed certain conditions upon the independent forensic examination, which he has requested, of the alleged murder weapon and the victim's medical and autopsy reports.

## I.

### FACTS

The relator, Ryan A. Sutton, was charged with committing homicide through the use of a deadly weapon in Ohio County, and prior to trial, the trial court acting pursuant to Rule 42.01 of the West Virginia Trial Court Rules, ordered that the relator, as well as the State, file statements of facts to be proved at trial, as well as the names and addresses of potential witnesses.[1] Additionally, in preparing for trial, the relator's attorney requested that the alleged murder weapon be turned over to an independent forensic expert for examination and testing. He also requested that the original medical and autopsy reports of the victim be turned over for examination. The trial court granted the relator's motions for an independent examination of the murder weapon and for an independent examination of the medical and autopsy reports, but required counsel for the relator to disclose the names of the experts whom he intended to employ, as well as their scientific backgrounds and the tests which they proposed to employ.

---

1. Rule 42.01 of the Trial Court Rules states:

   Prior to jury selection, unless otherwise ordered, the prosecutor and counsel for the defense shall each prepare and present to the court and to opposing counsel a statement of facts for the case being tried, which shall include the names of potential witnesses each may call during trial, including the place of residence or the municipal entity, if any, in which they live.

In the present proceeding, the relator claims that the trial judge should be prohibited from requiring him to give a statement of his case and to provide a witness list in advance of jury selection. He argues that what the court has required him to do is to disclose his theory of the case, the State's weaknesses, as well as his attorney's work product.

Additionally, the relator claims that, given the fact that he has not requested any non-mandatory discovery from the State, the trial court has erred in requiring him to reveal the names of the experts he intended to employ to examine the murder weapon and the autopsy and medical reports, as well as their findings.

## II.

### STANDARD FOR DETERMINING WHETHER PROHIBITION IS APPROPRIATE

■ In Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), this Court stated that:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear

error as a matter of law, should be given substantial weight.

## III.

### DISCUSSION

■ The relator's first claim in the present proceeding is that the trial judge erred, and violated his constitutional rights, by requiring him to disclose, in advance of jury selection, his witnesses and their addresses, his theory of his case, the State's weaknesses and his attorney work product, when he did not seek mandatory discovery from the State.

After examining the documents submitted in the present proceeding, this Court finds that the trial court did order that both the relator and the prosecution submit witness lists, but the court did not order that the relator submit his theory of the case, the State's weaknesses, and his attorney's work product. All that the court's order states is that: "It is further **ORDERED** that both counsel for the Defendant and counsel for the State shall submit in writing by the close of business on July 20, 2001, all required material as contained in Trial Court Rule 42.01...."

Additionally, the trial judge states in his memorandum in response to the rule to show cause in the present proceeding:

[I]t has become apparent that Petitioner [Relator] is confused as to the meaning of the phrase "a statement of facts." It is this Respondent's opinion, and had been the intent of its ruling on June 12, 2001, that "a statement of facts" does not imply a summary of each witnesses [sic] testimony. Instead, the phrase is more broad and global, akin more to a pre-trial memorandum statement of contentions.

Indeed, upon review of the transcript, the trial court on several occasions attempted to limit the scope and discussion of the Rule 42.01 motion to include just the names and addresses of the witnesses, and not a summary of testimony.... Hence, as is reflected in both the June 12, 2001 transcript as well as the July 20, 2001 Order, the Respondent's ruling has been that *both* parties are obligated to the language of

Rule 42.01, which ruling, to be clear, is that both parties are to disclose *only the names and addresses of the witnesses* that each may call at trial.

(Emphasis supplied.)

In *State ex rel. Hill v. Reed*, 199 W.Va. 89, 483 S.E.2d 89 (1996), this Court discussed the question of whether it was appropriate for a trial court to require a criminal defendant to disclose the names of his prospective witnesses. The Court recognized that jury selection was critical to the fairness of criminal trials and pointed out that a function of *voir dire* is to elicit possible prejudice possessed by prospective jurors which might affect their ability to render a verdict solely on the evidence under the instructions of the court. The Court also indicated that *voir dire* must be meaningful so that the parties may select a jury competent to judge and determine the facts in issue without bias, prejudice or partiality. The Court concluded that *voir dire* can not be effectively conducted unless the names of prospective jurors are disclosed prior to trial. As a consequence, the Court concluded that it was appropriate, and within the discretion of a trial judge, to require that the parties to a criminal proceeding prepare and submit to the court a list of their prospective witnesses, as well as the addresses of those witnesses.

The Court did, however, suggest in *State ex rel. Hill v. Reed, id.*, that there was a countervailing concern involved in the pretrial identification of witnesses. That concern is that the process of identifying witnesses not be used as a subterfuge for discovery where such discovery is not otherwise appropriate. In *State ex rel. Hill v. Reed, id.*, the relator did not seek disclosure pursuant to Rule 16 of the West Virginia Rules of Criminal Procedure, and the Court noted that he was not, therefore, obligated to make reciprocal disclosure to the State. The Court stated that:

Rule 16 [of the West Virginia Rules of Criminal Procedure] basically permits discovery by the State only if the defendant has already requested and received certain things and provides, in pertinent part, as follows:

(D) Defense Witnesses. **If the defendant requests disclosure** under subdivision (a)(1)(F) of this rule, upon compliance with such request by the state, **the defendant, on the request of the state, shall furnish the state with a list of the names and addresses of the witnesses the defendant intends to call in the presentation of the case in chief.** When a request for discovery of the names and addresses of witnesses has been made by the state, the defendant may be allowed to perpetuate the testimony of such witnesses in accordance with the provisions of Rule 15.

W.Va.R.Crim.P. 16(b)(D) (emphasis supplied).

Note 2, *State ex rel. Hill v. Reed, id.*

In *State ex rel. Hill v. Reed, id.*, this Court concluded that the circuit court's requiring the parties to produce witness lists was proper, and was within the court's discretion, where the circuit court required that the lists be provided on the day of trial. By so doing, the circuit court insured that the witness information was available for voir dire purposes, but was not available for impermissible discovery purposes.

In the present case, the trial court ordered that the witness information be provided by the close of business on July 20, 2001, when the time for trial was set for July 25, 2001, which potentially meant that four full days were available for investigation of the witnesses and consideration of their potential impact upon trial.

Although the Court believes this is a close case, the Court also believes that the four-day window for possible use of the witness information for discovery is too broad and that the potential that information will be used for impermissible discovery outweighs the permissible and appropriate use of the information for voir dire purposes.

Accordingly, the Court believes that although the circuit court properly did direct that the parties produce witness information, the court erred, or abused its discretion, in requiring the production of the lists days in advance of trial rather than on the first day

of trial as provided in *State ex rel. Hill v. Reed, id.*[2]

■ The relator in the present proceeding also claims that the trial court erred in requiring him to disclose the name of the expert whom he intended to use to examine the murder weapon and to disclose the testing procedures which the expert proposed to employ, and that the court erred in requiring him to disclose the identity of the expert who would examine the original medical reports and autopsy reports, as well as that expert's findings.

In *State v. Crabtree*, 198 W.Va. 620, 482 S.E.2d 605 (1996), this Court discussed at length the right of a criminal defendant to inspect tangible objects that are material to the preparation of his defense. The Court indicated that a criminal defendant clearly has the right to make such inspections and also has the right to have his own expert conduct such examination. However, in Syllabus Point 8 of *State v. Crabtree, id.*, the Court stated:

> A criminal defendant who desires to analyze an article or substance in the possession or control of the State under Rule 16 of the West Virginia Rules of Criminal Procedure should file a motion setting forth the circumstances of the proposed analysis, the identity of the expert who will conduct such analysis, and the expert's qualifications and scientific background. The trial court may then, in its discretion, provide for appropriate safeguards, including, where necessary, the performance of such tests at the State laboratory under the supervision of the State's analyst.

In the body of *State v. Crabtree, id.*, the Court indicated that while a criminal defendant has the right to have his expert examine an article in the State's possession which might advance his defense, the Court also recognized that the trial court has the right to control the examination process. The trial court's right to control the process is necessary to safeguard the integrity of the article examined as evidence, and this Court believes that a trial court must have some knowledge of who a proposed expert is, what his scientific background is, and what tests he expects to perform in order to frame controls over the examination process to insure that the integrity of the evidence is maintained.

In the present proceeding, the relator alleges that the circuit court has ordered him to reveal his forensic expert, the testing facility, the tests sought, and the results regarding the alleged murder weapon. He also alleges that the trial court has required him to reveal the forensic expert who will examine the murder victim's medical and autopsy reports, and the results of the examination.

A careful examination of the trial court's order dealing with the examination issues, shows that the trial court sought information necessary to establish controls necessary to maintain the integrity of the evidence. Specifically, the Court stated: "[T]he requirements of Syllabus Pt. 8, *State v. Crabtree*, must be met in that the Defendant must set forth the circumstances of the proposed analysis, the identity of the expert who will conduct such analysis and the expert's qualifications and scientific background."

Although *State v. Crabtree, id.*, dealt with a situation where a criminal defendant had made requests for non-mandatory discovery from the State which triggered the requirement that the defendant make reciprocal discovery, under the Rules of Criminal Procedure, a careful examination of *State v. Crabtree, id.*, reveals that policy concerns, that is, the concerns over the maintenance of the physical integrity of physical evidence, rather than the strict requirements of the Rules, dictated that a trial court be able to place controls on an independent forensic examination conducted by a defendant. Those concerns exist even if a defendant is not required to make reciprocal discovery under the Rules.

In view of the underlying policy considerations involving the preservation of potential

---

**2.** If the relator had requested disclosure of the State's evidence under Rule 16 of the Rules of Criminal Procedure, the State would have been entitled to reciprocal discovery and the requirement that the relator produce a witness list before the day of trial would not have potentially affected the relator's rights.

evidence, the Court believes that the authority of a court to maintain the integrity of physical evidence as delineated in Syllabus Point 8 of *State v. Crabtree, id.,* exists regardless of whether the motion to examine such evidence by a defendant is made under Rule 16 of the West Virginia Rules of Criminal Procedure, or otherwise. In light of this, this Court believes that the circuit court, in the present case, did not err in requiring the relator to reveal the identities of the experts whom he intended to use, their backgrounds, and the scientific tests which they intended to make since such information was reasonably necessary for the court to design a protocol which would allow appropriate independent examination and at the same time insure that the integrity of the evidence would be maintained. On the other hand, the Court cannot see how the requirement that the turning over of the independent forensic examiners' findings to the court, prior to trial, or to the State, would insure the integrity of the evidence. In view of this, the Court believes that unless a defendant, such as the relator in the present case, is required to make reciprocal disclosure under Rule 16 of the West Virginia Rules of Criminal Procedure, it would be improper for a court to require him to disclose his independent expert's findings.

For the reasons stated, this Court believes that the writ of prohibition which the relator seeks should issue, but should be moulded to provide that the circuit court may properly require the relator to provide a list of witnesses and their addresses, but not until the day of trial. The writ should be further moulded to provide that the court may require the relator to identify his forensic witnesses, their scientific backgrounds, and the tests which they propose to perform. The court may place requirements and/or restrictions on the performance of scientific testing as contemplated by *State v. Crabtree, id.,* to preserve the integrity of the evidence. The requirements, and other restrictions, should not be structured so that they require the relator to reveal his forensic expert's findings.

For the reasons stated, a writ of prohibition, moulded as set forth herein, is granted.

Writ granted as moulded.