No. 23-86, *State of West Virginia v. Gavin Blaine Smith*

**FILED**

**June 9, 2025**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Armstead, Justice, dissenting:**

The majority's decision to vacate the petitioner's convictions and grant him a new trial essentially permits criminal defendants to invite error and subsequently cite such error as a basis to overturn their conviction. In such circumstances as are present in this case, the invited error should not be deemed as reversible error and I therefore dissent as it relates to the majority's decision to vacate the petitioner's convictions.

The petitioner argues, and the majority agrees, that the circuit court erred by improperly informing the jury that if it convicted him of first-degree murder, the petitioner would be eligible for parole after fifteen years. Admittedly, the circuit court did so instruct the jury, and absent a legally justifiable reason, such instructions are generally disfavored.

The primary issue in this case revolves around the fact that the petitioner introduced the very issue for which he now complains. As the majority notes, the petitioner's counsel cross-examined the petitioner's girlfriend about her plea agreement with the State. According to the petitioner, the questions were meant to "highlight the [plea] bargain's value" by showing that the girlfriend "understood [what] the possible sentence would be if she proceeded to trial on the murder charges." I take no issue with the ability of the petitioner to engage in such cross-examination. The problem arose when the petitioner's counsel asked his girlfriend what sentence she had been facing for first-

1

degree murder prior to her plea agreement, and she did not state the correct answer. Specifically, she testified:

Q:     Okay.
       So what kind of sentence were you facing on the murder charge?
A:     It was, I believe, I think it was like 20 years.
Q:     You think you were facing a possible 20 year sentence on the murder charge?
A:     I am sorry, I don't understand.

Up to that point, the petitioner's counsel had led the girlfriend through a series of questions detailing her original charges (four counts of first-degree murder that were committed while she was seventeen years old) as well as the terms of her plea agreement. Had the petitioner's girlfriend answered the question correctly, the error that the petitioner complains of may have never occurred, but that is not what happened. The question posed by the petitioner's counsel and the resultant incorrect answer led to follow up questions, clarifying instructions, objections and jury instructions regarding the correct sentence for a person who commits first-degree murder when he or she is younger than eighteen years of age.

Later in his cross-examination of the girlfriend, the petitioner's counsel circled back to the sentence for her first-degree murder charge:

Q:     Back to the first degree murder charge that you were initially charged with?
A:     Yes.
Q:     Ask if you knew what is the sentence [] for first degree murder?
A:     Yes.

Q: You said that you didn't know.

Were you ever told that the sentence for first degree murder is life in prison?

A: Yes.

Q: Okay.

So you were charged with murder?

These aren't trick questions.

A: I know.

Right.

Q: I am trying to make sure.

You were charged with murder.

A: Yes.

Q: You had a lawyer?

A: Yes.

Q: And you were aware the whole time that you were charged that the sentence for murder is life?

A: Yes.

Q: That's the charge that was dismissed?

A: Yes.

Q: In order for you to take a plea bargain?

A: Yes.

At this point, the State asked to approach, and a bench conference was held. The State argued that the questioning posed by the petitioner's counsel "has now led the jury to believe that [the petitioner] will receive a life sentence if he is convicted of first degree murder," and I believe that the State was correct. In trying to clarify the sentence for first-degree murder for persons who commit the crime while they are younger than eighteen years old, counsel for the petitioner asked the girlfriend a leading question that

correctly noted that the potential sentence was life imprisonment, but it did not also inform the jury that the girlfriend, as a seventeen year old, was also statutorily entitled to receive life with mercy if convicted. The State argued that, while the jury should not consider sentencing "at all," the potential sentence had, nonetheless been introduced "through the back door." For this reason, the State objected and argued that the questioning by the petitioner's counsel had left the jury with the impression that the petitioner, if convicted, "will be locked up for the rest of his life." The State asked the circuit court to instruct the jury that juveniles who commit this crime "get to see the parole board after 15 years." Significantly, the petitioner did not object to the State's request.

The circuit court instructed the jury as follows: "The Court will instruct the jury with regards to first degree murder with regards to juveniles, juveniles are not subject to being in prison for the rest of their life, they are actually eligible for parole after 15 years."

However, this instruction was also not technically correct. If a juvenile commits first degree murder and is later convicted of that crime, the juvenile is clearly subject to the possibility of being incarcerated in prison for the rest of his or her life. The instruction went on to note that "juveniles are eligible for parole after 15 years." With respect to this instruction, the majority acknowledges that this instruction "could have been worded more clearly." However, the majority concluded that the instruction was not an "inherently incorrect statement of law." I believe that the instruction was confusing and

4

warranted clarification, which clarification the State sought to obtain at the close of the evidence.

During the jury charge conference, the State indicated that it was concerned that the above-referenced instruction might have confused the jury.[1] Therefore, the State offered a jury instruction to explain parole eligibility in the context of a first-degree murder conviction for a defendant who was under the age of eighteen at the time the crime was committed. The petitioner objected, but the circuit court overruled the objection and instructed the jury as follows:

> You're further instructed that if you find the Defendant, Gavin Smith, guilty of First Degree Murder, the Defendant will be confined to the penitentiary of this state for life, and as a juvenile when these subject acts occurred, he will be eligible to be considered for parole after serving a minimum of 15 years of his sentence. The fact that the Defendant is eligible to be considered for parole does not guarantee his release after serving 15 years. ***The West Virginia Board of Parole in considering whether the parole should or should not be granted to any inmate, may consider among the following matter, among other matters, the following factors: Whether the inmate has been found guilty of violating any institutional disciplinary rules, or whether the inmate has participated in institutional education, work or rehabilitative programs, and whether the inmate has previously been on parole or probation and, if so, how the inmate behaved thereon and the circumstances of his parole and probation revocation, and that the sentiment expressed by members of the community and of the criminal justice officials in the area where the crime occurred and in the area where the inmate lived prior to his conviction, if any such expressions are available. The facts and circumstances of the crime. And the demeanor of the inmate during the interview and***

---

[1] It appears that as a result of the State's concern about the earlier instruction, the State checked with the court reporter to confirm the wording of the earlier instruction.

*the attitudes expressed then with regards to his previous criminal behavior and to social moral, and to social morals and laws, and the inmates prior criminal record, if any. And the results of any available physical, mental or psychiatric examination. The Board shall assess all of these factors together to determine whether, one, the inmate can and will conduct himself in a lawful manner if released; and two, whether release is in the best interest of society. The Board will not parole an inmate if circumstances of the inmate specifically criminal act merit continued punishment, or other factors notwithstanding.* (Emphasis added).

The petitioner argues that this instruction was improper and created per se reversible error, even though the majority of this instruction was given *at the petitioner's request*. After the circuit court asked if it was necessary to discuss the parole board considerations, the State offered, at least twice, to strike the part of the instruction that discussed the factors that the parole board may consider. Upon learning that the circuit court was going to give a clarifying instruction, counsel for the petitioner asked that the portion of the proposed instruction discussing factors to be considered by the parole board "be kept in."

In a typical first-degree murder case involving a defendant who was a juvenile at the time of the alleged crime, this type of jury instruction may have been unwarranted. However, the petitioner's invited error injecting the issue of the potential sentence to which a juvenile may be exposed, set in motion the events that necessitated the clarifying instruction.

> "Invited error" is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate

> or erroneous response and then later seeking to profit from that error. The idea of invited error is not to make the evidence admissible but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences.

*State v. Crabtree*, 198 W. Va. 620, 627, 482 S.E.2d 605, 612 (1996). Further, "'[a]n appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case.' Syl. pt. 2, *State v. Bowman*, 155 W. Va. 562, 184 S.E.2d 314 (1971)." Syl. Pt. 1, *State v. Compton*, 167 W. Va. 16, 277 S.E.2d 724 (1981).

In this case, it was the petitioner's counsel who placed before the jury the potential sentence for first-degree murder committed by a person under eighteen by asking the petitioner's girlfriend about her sentence. Following her inability to articulate the correct sentence, counsel for the petitioner followed up and attempted to clarify the sentence by asking a leading question. Unfortunately, the leading question did not accurately clarify the potential sentence so the State requested an instruction from the circuit court during the petitioner's cross-examination of petitioner's girlfriend. The circuit court's instruction resulted in additional confusion and led to the State requesting a clarifying jury instruction at the close of the evidence. The circuit court agreed to give the State's requested jury instruction but asked if the language regarding factors to be considered by the parole board was necessary. In response, the State offered to strike the language regarding factors to be considered in granting parole, but the petitioner

7

specifically requested that such language "be kept in." During the jury charge conference, the State expressed its concern that it would be reversible error to not give the proposed instruction given the confusion that had been potentially caused by the earlier instruction. I believe that the State's efforts to remedy any confusion that resulted from the petitioner's introduction of testimony related to potential sentencing during the petitioner's trial was reasonable and, thus, the circuit court's clarifying instructions do not constitute reversible error. This is particularly true in light of the fact that, to the extent the circuit court's instructions related to sentencing were in any way erroneous, petitioner's counsel invited such error.

For these reasons, I believe the petitioner's convictions should be affirmed.