STATE OF WEST VIRGINIA

*v.*

LARRY EUGENE SMITH

(No. 13139)

Submitted September 20, 1972. Decided December 19, 1972.

*Wilson, Frame & Rowe, Clark B. Frame, Darwin F. Johnson,* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *Willard A. Sullivan, William R. Wooton,* Assistant Attorneys General, for defendant in error.

CARRIGAN, JUDGE:

The appellant, Larry Eugene Smith, was found guilty after trial in the Circuit Court of Monongalia County upon an indictment charging him with possession of "a narcotic drug, Cannabis, commonly known as Marijuana, in violation of W. Va. Code Ch. 16, Art. 8A, Sec. 2 (Michie 1966)." This Court granted an appeal to review the numerous assignments of error alleged to have been committed in his trial and conviction.

Larry Wildman, a West Virginia State Trooper, acting as an undercover agent, hereinafter referred to as such, had been on the West Virginia University campus for approximately six months investigating narcotics. During this time he dressed in casual clothes, let his hair grow, had on occasions purchased and smoked marijuana and had endeavored to infiltrate into groups involved in drug practices. He had not reported or disclosed his investigation to the university officials.

Larry Eugene Smith, the defendant, lived at 45 Beechurst Avenue, Morgantown, together with three other boys, one being Sam McCormick. Defendant was twenty years of age, not then attending school, but having attended Fairmont College one and one-half years. He was 1-A in the draft call, was employed on a part-time basis and was attempting to get regular employment.

Early on the evening of January 18, 1971, the undercover agent had gone to defendant's residence and had attempted to buy marijuana from this defendant, but defendant said: "I told him we didn't have any." Around 2:00 or 2:30 a.m., January 19, 1971, defendant answered a knock at the door, and seeing the undercover agent wearing his disguise, he having already entered a closed-in porch, the

door of which was always unlocked, admitted the undercover agent to the house. Upon entry the undercover agent began shouting in an excited manner that several places were being raided in Morgantown, and that he desired to see Sam McCormick. The undercover agent's express purpose for seeking entrance to the house was to serve an arrest warrant for Sam McCormick, although this purpose was not disclosed by him to the defendant. Defendant told him Sam was upstairs asleep. The undercover agent called for Sam and continued in an excited manner to shout that other places in Morgantown were being "busted," and stated: "If you've got anything in the house, for God's sake, get it out." The undercover agent testified that defendant thereupon went to the adjoining room and returned with a bowl, which was later found to contain various kinds of pills, and alleged marijuana, and that he said: "This is all the dope we got." At this moment two troopers, not in uniform, who had accompanied the undercover agent and were participating in the events, came through the door and into the room or hallway where defendant and the undercover agent were standing. The undercover agent testified that defendant then "jumped into me" dropping the bowl to the floor and scattering the contents. The undercover agent did not know at that time what drugs, if any, the bowl contained. He further testified that defendant shouted: "Run, Sam, Run." The undercover agent then pushed, slammed or otherwise knocked defendant into the wall, face forwards, breaking his glasses and causing blood to spurt from his nose. A doctor's examination the next day disclosed that his nose was broken.

The undercover agent testified that he had not entered the premises to arrest Larry Smith, that he had no search warrant; but only an arrest warrant for Sam McCormick; that he did not attempt to disclose his true identity to Larry Smith. He stated that although he had not entered the premises for Larry Smith: "I wanted Larry Smith and tried on several occasions to get him."

Defendant denied saying, "Run, Sam, Run," and stated that the undercover agent turned him around and threw him against the wall practically knocking him into unconsciousness without any provocation, and that this caused him to drop the bowl, thereby scattering the contents over the floor. At no time was it disclosed to defendant that police officers were in the house. Neither was he advised of the charge placed against him when he was taken into custody. Thereafter he was told he was "arrested" for interfering with an officer. Defendant denied interfering with an officer. He further denied knowing the contents of the bowl or that the bowl belonged to him.

Defendant's motion to suppress evidence concerning the contents of the bowl seized at defendant's dwelling was overruled. Prior to trial defendant moved to be permitted to examine the alleged marijuana, which motion was denied. Defendant also offered an instruction on entrapment which the court refused to give. Sometime after the jury had retired to consider their verdict, they sent a writing to the court, and signed by all twelve jurors, stating: "We, the jury, are unable to reach a unanimous decision as to the guilt or non-guilt of Larry Eugene Smith for the possession of cannabis." The court refused to accept this and sent the following message to the jury: "Continue your deliberations." Thereafter, in response to a knock at the jury room door, the county probation officer, acting bailiff, responded and engaged in a conversation with the jury in which the probation officer said he thought the court had instructed the jury that their verdict should be "either guilty or not guilty." On learning of this, defendant moved for a mistrial. While this motion was being argued it was reported that the jury had reached a verdict, that being a guilty verdict. The verdict as originally returned was rewritten, and after the rewritten verdict was read to the jury, some indicated agreement while others stood silent. Defendant's motion to poll the jury was overruled.

The defendant has assigned sixteen grounds of error claimed to have been committed during the trial. Certain alleged errors, if standing ·alone, would be considered harmless error, and would not in our opinion constitute grounds for reversal. However, certain other errors assigned by defendant do constitute reversible error.

The circumstances surrounding the arrest of defendant and the seizure of the alleged illegal substance are certainly open to serious questions.

The officers did not make known to defendant that they were police officers, they did not have a search warrant for the dwelling, nor did they have a warrant for defendant's arrest. In fact, they did not know that the bowl contained an illegal substance at the time he was taken into custody, or for some time thereafter. The original arrest of defendant for interfering with an officer was certainly not proper, since he did not know they were police officers at the time of the scuffle at his residence. At best, the officers had only a mere suspicion the bowl might possibly contain an illegal substance.

No search of a person or his dwelling or seizure of any article found can be made on mere suspicion, without a warrant for his arrest, or a search warrant, or unless one be lawfully arrested without a warrant, as authorized by law. All unlawful search and seizure violates Section 6, Article III of the Constitution of West Virginia. See *State v. Wills,* 91 W.Va. 659, 114 S.E. 261 (1922). *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, held evidence obtained by search and seizure in violation of the Fourth Amendment of the Federal Constitution was inadmissible, and further that such right of privacy was enforceable against the states through the due process clause of the Fourteenth Amendment.

Defendant's Instruction No. 6, which the court refused to give, dealt with the defendant's theory that he was entrapped into taking possession of the bowl containing the alleged illegal substance, by the conduct of the

undercover agent. There certainly is sufficient evidence in this case to entitle the defendant to have this instruction on entrapment given to the jury.

"In this jurisdiction where there is competent evidence tending to support a pertinent theory of a case, it is error for the trial court to refuse a proper instruction, presenting such theory, when so requested." Point 4, Syllabus, *State v. Hayes,* 136 W.Va. 199, 67 S.E.2d 9 (1951). See also *State v. Foley,* 128 W.Va. 166, 35 S.E.2d 854 (1945); *State v. Alie,* 82 W.Va. 601, 96 S.E. 1011 (1918) and *Newman v. U.S.,* 299 F. 128 (1924).

Defendant's motion to be permitted to examine the substance alleged to be marijuana was denied by the court. Defendant was indicted and found guilty under the former Narcotic Drugs statute contained in Chapter 16, Article 8A, in which the definition of cannabis, commonly known as marijuana, excluded certain parts of the plant in determining whether the substance was illegal. Because possession of certain parts of the cannabis plant were not illegal under the law as it existed at the time of defendant's arrest and trial, it was important to his defense to determine if the substance claimed to be cannabis was the illegal parts of the plant. He should have been permitted to examine a sample, under proper supervision and control, since it might have shown the alleged marijuana was not the illegal part of the plant. This certainly was material evidence as to the guilt or innocence of defendant. See *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

The record in this case discloses that the jurors sent a note to the court, signed by all twelve jurors, stating they could not agree on a verdict but were advised by a note from the court to continue their deliberations. The passing of writings or notes between the court and jury is not proper. Upon receipt of the note, the court should have called the jury back into the court room and there, in the presence of the defendant, given its further instructions. Subsequently, a conversation between the acting bailiff

and a juror or jurors, during their deliberations, concerning the fact that the court had instructed them to find the defendant guilty or not guilty indicates that the jury was not in agreement, and that the bailiff's conversation with the jury was prejudicial to defendant. This, when considered with the refusal of defendant's request that the jury be polled, leads to the conclusion that the jury should have been polled under the particular circumstances of this case. Further that taken as a whole, and particularly the fact of the bailiff's conversation, shows unequivocally that defendant was prejudiced by the manner in which the jury was handled.

In addition to the heretofore enumerated errors, the entire record before us indicates that the cumulative effect of the numerous errors committed during the trial of this case denied the defendant a fair trial as required by the West Virginia and Federal Constitutions and laws of this State.

For the foregoing reasons, the judgment of the Circuit Court of Monongalia County is reversed and this case is remanded for a new trial which hopefully will be free of the numerous errors committed in the first trial.

*Reversed and remanded.*