455 S.E.2d 541

STATE of West Virginia, Plaintiff
Below, Appellee

v.

David Duane ALLEN, Defendant
Below, Appellant.

No. 22240.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 4, 1994.

Decided Dec. 15, 1994.

Ted Nordstrom, Asst. Pros. Atty., Monongalia County, Morgantown, for appellee.

Edward R. Kohout, Morgantown, for appellant.

CLECKLEY, Justice:

The appellant and defendant below, David Duane Allen, seeks a reversal of his February 24, 1994, conviction for third offense driving under the influence (DUI) on the grounds that the Circuit Court of Monongalia County committed reversible error by communicating with the jury during the deliberations period without defendant's counsel's knowledge. Having examined the specifics of this case, we conclude that reversible error occurred; and, accordingly, we reverse the decision of the circuit court.

Appellant was arrested for DUI on September 25, 1993. He was indicted for third offense DUI and tried on this charge on February 24, 1994. The jury began its deliberations at 4:00 p.m. following the close of the evidence. At approximately 6:00 p.m., the jury sent a note to the court, indicating: "We are unable to reach a unanimous decision at the present time. We seem to have a problem and it would help greatly to clear up our indecision if we knew if it was a four door or a two door vehicle." [1] The court replied to the jury's question by sending a note in return which stated: "We cannot respond to this at this time. You simply must decide the case on the evidence as you remember it."

The jury was then brought into the courtroom to be sent home for the day and the note which had been sent by the jury and the court's response thereto was discussed in open court in the presence of the defendant and counsel at this time. While a court reporter was not transcribing this discourse between the court, the lawyers, and the jury, the parties appear to agree that a female juror then orally inquired how long they

---

1. Appellant's defense to the DUI charges was that he was not driving the vehicle which was stopped; he maintained that his girlfriend was driving and that he merely exited the vehicle on the driver's side at the time of the arrest. Conflicting evidence was introduced on this issue.

would have to deliberate before the court would consider them to be a hung jury. The court purportedly responded that it would not consider the jury hung after only two hours of deliberation and made the additional comment that "we are not going to retry this case."[2] To this retort, Appellant's counsel then elucidated for the jury's benefit that the court was not suggesting that any of the jurors had to change his or her vote just to reach a verdict. The court agreed with this clarification and stated that it would give them more time to deliberate.

The jury resumed its deliberations at 9:30 a.m. the next day. At 11:42 a.m., the jury sent a second note to the court, which indicated: "Based on the evidence we have received, this jury is unable to reach a unanimous decision. Discussion of the facts as we have them has not led to a change in the stalemate." Without advising counsel regarding this second note, the court sent the following reply: "You will be permitted to go to lunch and return to continue deliberations. You may decide on one or more of the individual counts verdicts."

Later in the afternoon on the second day of deliberations, the jury sent a third note to the court which stated: "We've made slight progress! Unfortunately we're still not unanimous on counts #1 and #2. We've reached a verdict on count #3." In response to this note, and again without consulting the lawyers, the court sent a note to the jury saying: "Keep working for a while and I'll discuss the matter with you." Within minutes, the jury sent a fourth and final note, stating that it had "reached a unanimous decision with no blood letting."

Appellant did not learn of the second through the fourth notes until after the trial. His counsel immediately requested a new trial predicated on the circuit court's communications with the jury.[3] The denial of the new trial motion forms the basis of this appeal.

2. The court does not recall making this statement. Furthermore, this matter was not made the subject of an assignment of error, nor was any record made of this alleged exchange. Consequently, we undertake no further examination of it.

3. Additional grounds were asserted in the new trial motion; however, because we find no merit

Appellant's primary contention is that the circuit court committed reversible error by having private communications with the jury. As grounds for this position, he cites the Sixth Amendment right to counsel and the concurrent right of a defendant to be present at every stage of the criminal proceeding. *See* U.S. Const. amend. VI; W.Va.R.Crim.P. 43; *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977). Appellant maintains further that the substance of the court's written communications with the jury were prejudicial because the court's directive to continue working could have been viewed by the jurors as implicit coaching to render a guilty verdict. In addition, Appellant contends that the short time span[4] between the court's reply to the third jury note and the rendering of the guilty verdict constitutes evidence that the circuit court's communications did have a prejudicial effect on the jury.

██ This Court first recognized in *State v. Smith*, 156 W.Va. 385, 390, 193 S.E.2d 550, 554 (1972), that "[t]he passing of writings or notes between the court and the jury is not proper." In *Smith*, we explained that the proper way to respond to a jury note is for the court to "call[ ] the jury back into the court room and there, in the presence of the defendant, give[ ] ... further instructions." 156 W.Va. at 390, 193 S.E.2d at 554. We subsequently stated in Syllabus Point 1 of *Klesser v. Stone*, 157 W.Va. 332, 201 S.E.2d 269 (1973), a civil case:

"As a general rule, all communications between the trial judge and the jury, after the submission of the case, must take place in open court and in the presence of, or after notice to, the parties or their counsel."

██ The concerns advanced by Appellant are rooted in the Sixth Amendment right to counsel. As we stated in Syllabus Point 6 of *State v. Boyd, supra:*

in those assignments, we decline to address the additional assignments.

4. It was reportedly only a matter of minutes after the jurors received the circuit court's response to their third written inquiry before they rendered a guilty verdict.

"The defendant has a right under Article III, Section 14 of the *West Virginia Constitution* to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless."

As we explained in *Sisler v. Hawkins*, 158 W.Va. 1034, 1039–40, 217 S.E.2d 60, 64 (1975), "due process of law under the Federal Constitution requires that a defendant be accorded the right to be present in person or by counsel at every stage of his trial."

In *Rogers v. United States*, 422 U.S. 35, 36, 95 S.Ct. 2091, 2093, 45 L.Ed.2d 1, 4 (1975), "the jury sent a note, signed by the foreman, to the trial judge, inquiring whether the court would 'accept the Verdict—"Guilty as charged with extreme mercy of the Court."' Without notifying the petitioner or his counsel, the court instructed the marshal who delivered the note 'to advise the jury that the Court's answer was in the affirmative.'" The jury returned the verdict five minutes later.

The United States Supreme Court held in *Rogers* that such *ex parte* communication was error. Furthermore, the error could not withstand harmless error analysis, because the response to the jury "may have induced unanimity." 422 U.S. at 36, 95 S.Ct. at 2093, 45 L.Ed.2d at 4.

▮ In the case at bar, three choices were available to the circuit court to avoid the initial *ex parte* communication with the jury. It could have instructed the jury in the presence of Appellant and counsel that it was to decide the case as it remembered the evidence; it could have allowed the parties to reopen the case to put on evidence to answer the jury's question—whether the vehicle was two door or four door;[5] or it could have sought the advisability of a stipulation as to this fact. Obviously, the jury considered the missing fact important and that was evident from the wording of its inquiry ("it would help greatly to clear up our indecision if we knew if it was a four door or a two door vehicle"). Although this matter could have been resolved in minutes, if not seconds, the circuit court unilaterally decided to respond to the question by denying the request. The error here is exacerbated by the court's comments in the presence of the jury that it did not intend to retry this case.

After receiving the second note from the jury that it was unable to reach a unanimous decision, the circuit court replied that it could render a verdict "on one or more of the individual counts." This note is the most difficult to interpret. The jury may have interpreted this communication to indicate that if it found the Appellant guilty of at least one of the charges, deliberations would be discontinued. Likewise, it is plausible to infer that the jury concluded that the circuit court believed there was sufficient evidence to convict on at least one of the charges. While both of these are mere possibilities, we know as a fact that the jury did as suggested by the court.

More troublesome is the fact that the jury stated in the third note that it had reached a verdict on count three, but was still not unanimous on counts one and two. After receiving instructions from the circuit court that it was to continue deliberations nonetheless, the jury sent a note within minutes claiming to have reached a unanimous verdict on all counts. It is significant that the jury reached a consensus immediately after receiving the court's response despite their continued indication for hours that it could

---

5. Whether the trial court should permit reopening of the case after the jury has retired is within its discretion. *State v. Sandler*, 175 W.Va. 572, 336 S.E.2d 535 (1985) (relevant factors to be considered in exercising court's discretion). The most pivotal factor among those listed in *Sandler* is whether the reopening is at the request of the jury. Relying on the point that an important indicium for the trial court in exercising its discretion is whether the reopening is at the request of the jury or the parties, this Court in *State v. Thomas*, 179 W.Va. 811, 374 S.E.2d 719 (1988), upheld permission for a jury to have a view of the crime scene after the jury had started its deliberations. We do not mean to suggest that a trial court is required to reopen a case every time it is requested by the jury. *See State v. Harding*, 188 W.Va. 52, 57, 422 S.E.2d 619, 624 (1992) (trial court properly refused reopening where "[e]vidence regarding the issue encompassed within the jury's question had already been presented during trial"). However, where the trial court refuses in violation of the defendant's constitutional rights to discuss the jury's note with defendant and his counsel, there is no basis for concluding that the court properly exercised its discretion.

not agree. Obviously, one or more jurors changed their vote after receiving the third note from the circuit court ·in order to avoid further deliberations.

As we recently discussed in *State v. Kelley,* 192 W.Va. 124, 130, 451 S.E.2d 425, 431 (1994):

"Where constitutional rights are involved, the United States Supreme Court in *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), set forth the federal standard in regard to harmless constitutional error. The paramount question that must be answered in making this determination is 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' *Id.* at 86–7, 84 S.Ct. [at] 230, 11 L.Ed.2d at 173."

Subsequent to *Fahy,* the United States Supreme Court elucidated that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967).

In *Rushen v. Spain,* 464 U.S. 114, 119–20, 104 S.Ct. 453, 467, 78 L.Ed.2d 267, 273–74 (1983), the United States Supreme Court emphasized the importance of the post-trial hearing for inquiry into the alleged prejudicial effect of any *ex parte* communications between the judge and jury or individual jurors:

"When an ex parte communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties. The prejudicial effect of a failure to do so, however, can normally be determined by a post-trial hearing. The adequacy of any remedy is determined solely by its ability to mitigate constitutional error, if any, that has occurred." (Footnote omitted).

■ Despite the fact that a post-trial hearing was held in this case, we are not convinced that the circuit court properly evaluated the issue of prejudicial error resulting from the judge/jury communications which occurred during the deliberations period. In order to adequately determine how the jury interpreted the ongoing communication with the circuit court, it would be necessary to conduct a juror poll. Without such concrete evidence of the jurors' interpretations of the notes received from the circuit court, we can only speculate what impact they had during deliberations. Thus, we are unable to say that these constitutional violations are harmless beyond a reasonable doubt.

■ Accordingly, we hold that the proper method of responding to a written jury inquiry during the deliberations period in a criminal case, as we stated in *Smith,* is for the judge to reconvene the jury and to give further instructions, if necessary, in the presence of the defendant and counsel in the courtroom. 156 W.Va. at 390, 193 S.E.2d at 554. When a jury inquiry is not handled in this manner, the resulting violation of constitutional rights cannot be viewed as harmless error unless the reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 711.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.