522 S.E.2d 636

**STATE of West Virginia ex rel. Charles R. EDGELL, Petitioner Below, Appellant,**

v.

**Howard PAINTER, Warden, Mount Olive Correctional Complex, Respondent Below, Appellee.**

**No. 25896.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1999.

Decided Oct. 13, 1999.

---

Mark Pellegrin, Morgantown, West Virginia, Attorney for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Allen H. Loughry, II, Assistant Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

PER CURIAM:

This is an appeal by Charles Ray Edgell, appellant/petitioner (hereinafter referred to as "Edgell") from an order by the Circuit Court of Monongalia County denying him habeas corpus relief. Edgell had alleged several grounds of ineffective assistance of counsel during his trial for sexual offenses. In this appeal, he contends the circuit court committed error by failing to conclude that trial counsel was ineffective by: (1) failing to call a specific witness; (2) failing to seek a continuance because of late disclosed evidence by the prosecutor; (3) failing to object to closing remarks by the prosecutor; and (4) failing to object to communication by the trial judge with the jury. Edgell further contends that the circuit court committed error in ruling that the trial judge improperly denied his motion for acquittal. Finally, Edgell contends that the circuit court committed error by failing to appoint a special prosecutor for the habeas proceeding. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we affirm the decision of the Circuit Court of Monongalia County.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Edgell was found guilty of three counts of second degree sexual assault of a thirteen year old girl on December 9, 1994. He was sentenced on January 18, 1995 to three concurrent 10 to 20 year terms of imprisonment. Edgell timely filed a petition for appeal with this Court. After careful consideration, this Court denied that appeal.

Next, Edgell filed a petition for a writ of habeas corpus in the circuit court on September 13, 1995. Counsel was appointed for the habeas proceeding. On June 28, 1996, the circuit court denied the habeas relief. This Court subsequently denied the appeal on March 19, 1997.

Notwithstanding Edgell's numerous appeals,[1] he again filed a habeas proceeding with this Court on September 30, 1997. On October 2, 1997, we issued an order requiring the circuit court to conduct an omnibus hearing on the habeas petition. Counsel was appointed to represent Edgell at the omnibus hearing. The circuit court conducted an evidentiary hearing on May 18, 1998. On September 17, 1998, the circuit court issued an order denying the habeas relief. From the September 17, 1998, circuit court order Edgell now appeals.

## II.

## STANDARD OF REVIEW

We have held that "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. Pt. 1, *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975). It was further

---

1. Prior to our refusal of the habeas petition for appeal, Edgell filed a habeas petition with this Court under our original jurisdiction. *See* W.Va. Const. art. VIII, § 3. We denied that petition on December 5, 1996. Edgell filed a second habeas petition before the circuit court. The circuit court dismissed the second habeas petition on June 12, 1997, on the grounds that no new issues were presented in the petition. That ruling was not appealed to this Court. A habeas petition was next filed by Edgell in the United States District Court for the Northern District of West Virginia. The federal petition was dismissed without prejudice as a result of Edgell's failure to exhaust his state court remedies.

indicated by this Court in *Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995) that: "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." *See Stuckey v. Trent,* 202 W.Va. 498, 501, 505 S.E.2d 417, 420 (1998).

## III.

## DISCUSSION

### A. Ineffective Assistance of Counsel Claim

■ Edgell brings this proceeding alleging ineffective assistance of counsel during his criminal trial. In syllabus point 5 of *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), Justice Cleckley articulated the test used to evaluate a claim of ineffective assistance of counsel. *State v. Miller* held:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

The *Miller* decision further noted:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 6, *Miller.*

■ Justice Cleckley later clarified in syllabus point 5 of *State ex rel. Daniel v. Legursky,* 195 W.Va. 314, 465 S.E.2d 416 (1995), that "[i]n deciding ineffective of assistance claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." The decision in *Legursky* crystallized two other important observations:

> The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation.

> In determining whether counsel's conduct falls within the broad range of professionally acceptable conduct, this Court will not view counsel's conduct through the lens of hindsight. Courts are to avoid the use of hindsight to elevate a possible mistake into a deficiency of constitutional proportion. Rather, under the rule of contemporary assessment, an attorney's actions must be examined according to what was known and reasonable at the time the attorney made his or her choices.

Syl. Pts. 3 & 4, *Legursky.*

It is from this general framework that we must analyze each of Edgell's separate concerns regarding his claims of ineffective assistance of counsel.

### 1. Failing to Call a Specific Witness

■ Edgell first contends that it was ineffective assistance of counsel for the failure of

his attorneys to call Kim Roth as a witness. Ms. Roth was a caseworker employed by the West Virginia Department of Health and Human Resources. Ms. Roth took the victim from her home on the day of the sexual assault and transported her to Romney Child–Care Center, where she had been living.[2] The evidence at trial indicated the victim was sexually assaulted during the morning hours in May, 1992.[3] However, the victim actually testified that Ms. Roth picked her up during the evening hours on the day of the sexual assault.[4] However, Ms. Roth's log entry revealed that she transported the victim during the morning hours. During the habeas proceeding, Edgell contended that it was critical to have Ms. Roth called as a witness, because, among other things, she could have testified that the victim was picked up during the morning of the assault thereby contradicting the victim's testimony.

The circuit court concluded that Edgell did not receive ineffective assistance of counsel because of the failure to call Ms. Roth. The circuit court's order addressed the issue as follows:

> ... At that [omnibus] hearing, the testimony of Kim Roth and other absent witnesses was introduced by [Edgell] and [his] trial counsel testified with regard to their handling of the trial in this matter ... [Edgell's] trial counsel made legitimate tactical decisions not to call certain witnesses in the trial of this matter out of a concern that those witnesses would contradict or explain in a fashion adverse to the Defendant matters contained in DHHR records which were introduced at the trial of this matter.

The record supports the circuit court's finding that Edgell's trial counsel made a specific tactical decision not to call Ms. Roth. Counsel believed that Ms. Roth might explain away the log entry. Instead of calling Ms. Roth as a witness, the trial attorneys introduced the log entry through another social worker. The social worker knew nothing about the incident described in the log entry.

The State argues that no prejudice resulted from failing to call Ms. Roth as the log entry was actually introduced into evidence. The State further contends that the jury heard the victim's version of the events. Even though the log entry contradicted the victim's testimony, the jury chose to believe the victim.

█ In summary, the defense attorneys made a tactical decision to allow the log entry to be introduced in such a manner as to make it impossible to discredit. We believe that the decision to introduce the log entry in a manner that protected it from being impeached was a reasonable tactical decision. However, we do have concerns about the trial counsel's failure to even attempt to contact or interview Ms. Roth as a potential witness. It seems that a reasonable criminal defense attorney would have, at least, contacted Ms. Roth. It appears to this Court that it was imperative that Ms. Roth be contacted and questioned by defense counsel. Therefore, under the first prong of the *Strickland–Miller* test, defense counsel's performance was deficient under an objective standard of reasonableness.

█ Now, the issue is to determine whether there is a reasonable probability that, but for counsel's error, the result of the trial would have been different. It is the second prong of the *Strickland–Miller* test that Edgell must now overcome. Unfortunately, Edgell has failed to point to any specific testimony that Ms. Roth would have given, other than restating what was in the log entry. During the omnibus hearing, Ms. Roth testified that she could not add to, nor subtract from the log entry. Therefore, while it was unreasonable for defense counsel to fail to contact Ms. Roth, no prejudice resulted therefrom.

2. The victim was the daughter of the Edgell's girlfriend. The victim apparently was a troubled youth and was not living at home. The victim had been visiting her mother for the weekend when the sexual assaults occurred.

3. The victim was thirteen years old at the time of the sexual assault.

4. The victim's mother and siblings were not at home when the crime occurred.

### 2. Failing to Seek a Continuance Because of Late Disclosed Evidence by the Prosecutor

Edgell contends that defense counsel's failure to seek a continuance after the late disclosure of evidence by the State constituted ineffective assistance of counsel. The evidence in question was a scrapbook that was created in part by the victim. The scrapbook was a mixture of pictures and writings concerning the sexual assault. The State did not produce the scrapbook until the day before trial. The trial court admitted into evidence those portions of the scrapbook that were actually created by the victim.

The circuit court concluded that defense counsel's failure to seek a continuance due to late disclosure of the scrapbook did not constitute ineffective assistance of counsel. The circuit court ruled as follows: "Furthermore, the Court is convinced that the failure of trial counsel to ask for a continuance after the State's late disclosure of the scrapbook was not ineffective assistance of counsel. Both trial counsel testified at the Omnibus hearing that the information contained in the scrapbook was not that difficult to deal with and that they had adequate opportunity to review the scrapbook and to prepare to respond to it."

Defense counsel objected to the use of the scrapbook. The trial judge overruled the objection. Edgell contends that defense counsel should have vouched the record by requesting a continuance to prepare a defense to the scrapbook. During the omnibus hearing both defense counsel testified that the material in the scrapbook did not necessitate a continuance. Edgell strongly suggests that a continuance was necessary. However, Edgell has suggested no reasonable basis to support the need for seeking a continuance. Late disclosed evidence must present some inherent difficulty for the defense to justify a continuance. We simply have not been shown by Edgell that the scrapbook presented an inherent difficulty to his defense. Consequently, under the first prong of the *Strickland–Miller* test, Edgell has failed to show that defense counsel's performance was deficient under an objective standard of reasonableness.

### 3. Failing to Object to Closing Argument Remarks by the Prosecutor

Edgell next contends that defense counsel was ineffective in failing to object to certain closing remarks by the prosecutor. Edgell argues that the remarks constituted an improper vouching for the credibility of the victim. He also asserts that the prosecutor made improper statements as to his guilt.[5] The circuit court found no basis for an objection by defense counsel to remarks made by the prosecutor during the closing argument. The circuit court ruled: "Nothing stated by the Prosecutor in closing argument was improper, nor did it go beyond the perimeters of appropriate zealous representation of the State of West Virginia."

We cannot conclude that the prosecutor's remarks were improper. A prosecutor is allowed to argue all reasonable inferences from the facts presented at trial. The prosecution's comments on the witnesses' testimony were based on reasonable inferences from the facts. The remarks did not include any interjection of the prosecutor's personal opinion as to the truthfulness of the witnesses. This Court held long ago in the single syllabus of *State v. Moose*, 110 W.Va. 476, 158 S.E. 715 (1931):

An attorney for the state may prosecute vigorously as long as he deals fairly with the accused; but he should not become a partisan, intent only on conviction. And, it

---

5. Edgell lists in his brief the following remarks as improper:

1 "Let me suggest to you that there is no reason to disbelieve [the victim]. None. You can't not believe her."

2. "You can believe her when she tells you that Ray Edgell ... made her get on the bed and hold still so he could perform oral intercourse on her. You can believe her because that's what happened."

3. "She told that story because that's what happened to her."

4. "She told you the truth and the truth is that Ray Edgell is guilty...."

5. "Dr. Kreig, what a pompous piece of work he was." [A defense witness]

6. "She didn't tell you for any other reason beside the fact that it's the truth."

is a flagrant abuse of his position to refer, in his argument to the jury, to material facts outside the record, or not fairly deducible therefrom.

Consequently, under the first prong of the *Strickland–Miller* test, Edgell has failed to show that defense counsel's performance was deficient under an objective standard of reasonableness.

### 4. Failing to Object to Communication by the Trial Judge with the Jury

■■ Edgell argues that he received ineffective assistance of counsel when his attorneys failed to object to the manner in which the trial judge handled jury questions. The jury forwarded the following question to the trial judge: "Judge Starcher: If the jury is not unanimous in their vote of 'guilty' or 'not guilty' do we automatically return a vote of 'not guilty' or do we report that we are unable to reach a unanimous decision?" The trial judge sent the following response to the jury: "Continue to deliberate ... but the answer is the latter, i.e., either 'guilty' or 'not guilty' must be unanimous."

A second question was later submitted by the jury: "Judge Starcher: We would like to read the transcript of testimony from Ray Edgell and [the victim]. Also, can we hear the tape of their testimony?" The trial judge responded: "Sorry, you cannot have selected portions of the testimonial evidence (It would actually be impractical to provide the jury a transcription of testimony). You must use your collective memories to decide the facts."

The circuit court found that Edgell did not receive ineffective assistance of counsel because his attorneys did not object to the manner in which the trial judge handled the jury questions. We agree. Justice Cleckley indicated in syllabus point 3 of *State v. Allen*, 193 W.Va. 172, 455 S.E.2d 541 (1994) that "[t]he proper method of responding to a written jury inquiry during the deliberations period in a criminal case ... is for the judge to reconvene the jury and to give further instructions, if necessary, in the presence of the defendant and counsel in the courtroom." In *Allen* we reversed a third offense DUI conviction because the trial court held several ex parte communications with the jury.

Additionally, the defendant nor defendant's counsel's had knowledge of the communication.

Here, the trial judge did not reconvene the jury to answer its questions. Unlike *Allen*, the trial court communicated with defense counsel regarding the jury's questions and the trial court's responses. Obviously, if the substance of the communication by the trial judge with the jury misstated the law or reasonably conveyed some impermissible matter, it would be reasonable to expect defense counsel to object to the communication. In this case, the judge's responses were substantively accurate.

Edgell misinterprets the situation *Allen* sought to prevent. *Allen* was concerned with ex parte communication by a trial judge with the jury. When defense counsel has knowledge of the jury's request and has knowledge of the trial court's response, there is no constitutional right to have the jury reconvened to give a response which in substance is accurate. Assuming, without deciding, that a reasonable attorney would have and should have objected to the trial judge's failure to reconvene the jury, Edgell has not demonstrated prejudice from such failure to object. The content of the trial judge's responses were accurate and would have carried no greater or lesser meaning, whether conveyed by notes or oral responses in court. Therefore, Edgell's argument fails.

### B. Improperly Denying Motion for Acquittal

■■ Edgell filed a post-trial motion requesting acquittal based on the purported "inherently incredible" testimony of the victim. The circuit court's habeas order stated: "Careful review [of the argument] indicates that this issue ... has been considered by this Court on previous occasions and determined to be without merit." Our concern with this issue, is that it is not a proper ground to assert in a habeas proceeding. Edgell's motion presents no constitutional claim. We have held that "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 4, *State ex rel. McMannis*

*v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979). Therefore, the denial of Edgell's motion for acquittal has no merit.

### C. Failure of Circuit Court to Appoint a Special Prosecutor for the Habeas Proceeding

 Finally, Edgell requested the circuit court appoint a special prosecutor to represent the State in the habeas proceeding because one of his trial attorneys, Belinda Haynie, was now employed with the prosector's office. The circuit court, after holding a hearing, denied the request. We find this issue equally to be without merit. This Court held in syllabus point 2 of *State ex rel. Tyler v. MacQueen,* 191 W.Va. 597, 447 S.E.2d 289 (1994):

> Pursuant to Rule 1.11 of the West Virginia Rules of Professional Conduct, the fact that an assistant prosecuting attorney previously represented a criminal defendant while in private practice does not preclude the prosecutor's office as a whole from participation in further prosecution of criminal charges against the defendant, provided that the circuit court has held a hearing on any motion to disqualify filed on this basis and determined that the assistant prosecutor has effectively and completely been screened from involvement, active or indirect, in the case.

Edgell has failed to show that Ms. Haynie was not effectively screened from contact with the prosecutor's office regarding his case. Edgell contends that because his other defense counsel, William F. Byrne, spoke separately with the prosecutor and with Ms. Haynie, there was an indirect failure to effectively screen Ms. Haynie. This argument is meritless as it presents no evidence of Ms. Haynie consulting with the prosecutor about the case. Obviously, Ms. Haynie could consult with Mr. Byrne because they both represented Mr. Edgell at the trial. As such, we conclude no error resulted by the circuit court's failure to appoint a special prosecutor for Edgell's habeas proceeding.

### IV.

### CONCLUSION

For the reasons set forth herein, we find that the Circuit Court of Monongalia County committed no reversible error. As such, we affirm the circuit court's order.

Affirmed.

Chief Justice STARCHER, deeming himself disqualified, did not participate in the decision of this case.

Judges RISOVICH and WILKES, sitting by temporary assignment.