# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 13-1049** (Mercer County 12-F-105)

**Jessica Persianni Roberts,**
**Defendant Below, Petitioner**

**FILED**

October 17, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jessica Persianni Roberts, by counsel David B. Kelley, appeals the July 29, 2013, order of the Circuit Court of Mercer County denying petitioner's motion to set aside the jury verdict and for a new trial following her convictions of first degree robbery and conspiracy. The circuit court sentenced petitioner to a determinate term of thirty years in prison for first degree robbery and an indeterminate term of one to five years in prison for conspiracy, to run consecutively. Respondent State of West Virginia, by counsel Derek A. Knopp, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Facts

On or about August 22, 2011, at approximately 11:30 p.m., petitioner's husband, David Roberts, entered a convenience store, known as the Pop Shop, in Bramwell, Mercer County. Petitioner was parked about fifty yards away in a Lincoln Navigator. In the store at the time were Candace Flanigan, the store clerk, and Andrew Bailey, her boyfriend. Petitioner's husband entered the store armed with a shotgun wearing a hoodie pulled around his face. He demanded that Ms. Flanigan give him the money from the cash register. Petitioner's husband took the money from the register, and as he went to leave the store, Mr. Bailey drew a concealed handgun and shot him multiple times. Petitioner's husband fell to the ground in front of the store and dropped the money.

Shortly after the shots were fired, petitioner drove the Lincoln Navigator to the front of the Pop Shop, and asked if she could take her husband to the hospital.[1] Ms. Flanigan and Mr.

---

[1] Flanigan testified that petitioner was a frequent customer of the Pop Shop, so she recognized petitioner and the Lincoln Navigator.

1

Bailey did not allow petitioner to remove her husband. Petitioner then began picking up some of the money that her husband had dropped and left the scene.[2] Petitioner's husband died as a result of his injuries. When Ms. Flanigan made the final count of the money after the robbery, approximately $700 was missing.

Petitioner was located the next morning at a friend's house in McDowell County by Deputy J.D. Gills of the Mercer County Sheriff's Department. Deputy Gills transported petitioner to the Welch detachment of the West Virginia State Police, where she received her *Miranda* rights and gave an audio-recorded statement to Sergeant Christopher Smith.[3]

Petitioner was indicted in February of 2012, and charged with first degree robbery, conspiracy, and first degree murder.[4] The circuit court held suppression hearings on March 21, 2013, and April 30, 2013, and suppressed petitioner's statements to Deputy Gills, but ruled that her statement to Sergeant Smith was admissible. Following a two-day jury trial, petitioner was convicted of first degree robbery and conspiracy. Petitioner moved to set aside the verdict and for a new trial, which the circuit court took under advisement at the time.

Following a hearing, by order entered July 23, 2013, the circuit court denied petitioner's post-trial motions, ruling, in relevant part, that (1) there was sufficient evidence that petitioner's statement was voluntary; and (2) there was no evidence to justify a duress instruction regarding petitioner's mental state. The circuit court sentenced petitioner to a determinate term of thirty years in prison for first degree robbery and an indeterminate term of one to five years in prison for conspiracy, to run consecutively. This appeal followed.

## Discussion

Petitioner raises seven assignments of error on appeal. First, she argues that the circuit court erred by refusing to instruct the jury on duress. "As a general rule, refusal to give a requested jury instruction is reviewed for an abuse of discretion." Syl. Pt. 1, in part, *State v. Hinkle,* 200 W.Va. 280, 489 S.E.2d 257 (1996). Forensic psychologist, Dr. Timothy Saar, evaluated petitioner on behalf of the defense to assess her competency to stand trial. Through Dr.

---

[2] The State introduced video surveillance of the area that showed petitioner pull up in the Lincoln Navigator after the shots were fired and pick up money that was lying on the ground by her husband's body. Additionally, the shotgun used by petitioner's husband belonged to petitioner's father.

[3] In the statement given to Sergeant Smith, petitioner denied involvement in the robbery, claiming that she arrived at the Pop Shop only after her husband had been shot. However, petitioner reported to Dr. Timothy Saar, forensic psychologist and her expert witness at trial, that she honked the horn in her vehicle to distract her husband or to make him return while he was in the Pop Shop.

[4] The murder charge was later dropped.

Saar, petitioner presented evidence that she endured severe domestic violence during her eleven-year marriage. Based on what petitioner reported to him, Dr. Saar testified that while petitioner waited in the car near the Pop Shop, she honked the car horn for her husband to return. At one point, he came back angry and threatened her, and this is when eleven years of abuse came into play, causing petitioner to go into "survival mode." Based on this testimony, petitioner requested a duress instruction. In Syllabus Point 1 of *State v. Tanner,* 171 W.Va. 529, 301 S.E.2d 160 (1982), this Court held as follows:

> In general, an act that would otherwise be a crime may be excused if it was done under compulsion or duress, because there is then no criminal intent. The compulsion or coercion that will excuse an otherwise criminal act must be present, imminent, and impending, and such as would induce a well-grounded apprehension of death or serious bodily harm if the criminal act is not done; it must be continuous; and there must be no reasonable opportunity to escape the compulsion without committing the crime. A threat of future injury is not enough.

In the present case, the circuit court permitted extensive testimony regarding battered woman's syndrome, but refused to give a duress instruction. "This Court has long held that '[w]here [in a trial by jury] there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested to do so.'" *State v. Headley,* 210 W.Va. 524, 529, 558 S.E.2d 324, 329 (2001) (quoting Syl. Pt. 7, *State v. Alie,* 82 W.Va. 601, 96 S.E. 1011 (1918)). However, "[i]nstructions must be based upon the evidence and an instruction which is not supported by evidence should not be given." Syl. Pt. 4, *State v. Collins,* 154 W.Va. 771, 180 S.E.2d 54 (1971).

Petitioner's argument "ignores that it is the compulsion, not the apprehension or fear, which must be present, imminent, impending, and continuous in order to negate criminal intent." *State v. Poling,* 207 W.Va. 299, 305, 531 S.E.2d 678, 684 (2000). The evidence fails to support her argument that her husband coerced her into becoming involved in the robbery. The only evidence petitioner presented in this respect was the testimony of Dr. Saar based on his evaluation of petitioner. Dr. Saar focused only on petitioner's state of mind after she was sitting in the car at the Pop Shop and honked the horn to distract her husband to get him to come back.[5] This evidence is uncorroborated and is contradicted by petitioner's statement to law enforcement, wherein she stated that someone else drove her husband to the Pop Shop and by the time she got there, her husband was lying on the ground having already been shot.

Also, even though the circuit court did not give a duress instruction, it instructed the jury on battered woman's syndrome, allowing the jury to consider petitioner's past abuse in determining whether criminal intent existed. The circuit court also instructed the jury regarding diminished capacity, allowing the jury to consider whether petitioner suffered from any mental disease or defect that rendered her incapable of forming criminal intent. Petitioner has failed to show how the lack of a duress instruction impaired her ability to give an effective defense as the

---

[5] Petitioner did not testify. Mr. Bailey and Ms. Flanigan both testified that they did not hear a car horn.

other instructions allowed the jury to consider her lack of criminal intent. Therefore, we find no error in the circuit court's refusal to give a duress instruction.

Second, petitioner argues that the circuit court erred in refusing to suppress her statement to Sergeant Smith. While petitioner admits to signing the paperwork necessary for Sergeant Smith to do the interview, she contends that she was tired, confused, and asked to go home. Also, she states that, despite being told she was free to leave, she did not believe that she could, and offers the following excerpt from the taped interview as support for that belief: "And when I've asked if I could leave before they told me I was being detained. To sit back down in the chair. So, no, I haven't been able to leave when I asked to." Further, petitioner argues that she questioned Sergeant Smith about getting a lawyer, but he continued with taking her statement. Lastly, she argues that the statement should have been suppressed because she was in shock over the death of her husband and under the influence of drugs.

Upon our review, we disagree with petitioner. We have held that

> [w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, *State v. Lacy,* 196 W.Va. 104, 468 S.E.2d 719 (1996). "[L]egal conclusions made with regard to suppression determinations are reviewed de novo." Syl. Pt. 3, in part, *State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886 (1994).

The recorded statement indicates that petitioner understood the rights she waived by signing the *Miranda* form. Additionally, petitioner was informed that she could stop the interview at any time as it was explained on the form. Sergeant Smith repeatedly told petitioner that she did not have to talk to him at all. Construing the facts in the light most favorable to the State, the circuit court did not err in denying petitioner's motion to suppress.

Petitioner's third assignment of error is that the circuit court erred by allowing the admission of information related to her prior arrests, which was included in her statement to Sergeant Smith, despite an agreement that such information would not be included in the testimony. During the statement, Sergeant Smith asked petitioner about her prior arrests in the context of whether she understood her *Miranda* rights. He asked her if she had ever had those rights read to her and petitioner said "when I was arrested, yes." She then went on to say she had had *Miranda* rights read to her twice, meaning she had been arrested twice previously. The circuit court had previously ruled that evidence of petitioner's prior arrests was inadmissible. At a bench conference at the beginning of the playing of the recorded statement for the jury, the State indicated that the references to prior arrests had been removed from the tape. However, the references to petitioner's prior arrests *in the context of whether she understood her Miranda rights* were not removed and the jury heard them. Petitioner contends that these references constituted improper admission of 404(b) evidence.

4

We do not believe the inclusion of these vague references to prior arrests warrants a new trial. First, without objection from petitioner, Deputy Gills testified that he had found arrest records for both petitioner and her husband. Also, petitioner herself elicited testimony from her expert regarding her drug use in support of her voluntary intoxication defense. Therefore, we do not believe that the brief mention of her prior arrests in the context of *Miranda* warnings prejudiced petitioner.

In any event, if there was error, it was harmless. We have held as follows:

> Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

Syl. Pt. 2, *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979). There were two eyewitnesses and video surveillance showing petitioner driving up to the store and picking up money her husband had dropped. Therefore, if one removes the evidence of petitioner's prior arrests, there was still sufficient evidence to sustain the convictions.

Fourth, petitioner argues that the circuit court erred by allowing testimony about the contents of her purse upon her arrest. Deputy Gills testified that petitioner's purse was full of needles. In addition, he testified that pictures of the inside of the store showed a display of insect-repellant bracelets that had been knocked over. Deputy Gills testified that the same type of bracelet was found in petitioner's purse. However, petitioner argues that there was no evidence that she was in the store on the day of the robbery; rather, there was evidence that she was a frequent customer there, which explains the insect-repellant bracelet in her purse.

Petitioner concedes that she did not object to the testimony about the content of her purse at trial; therefore, she urges this Court to find that the admission of such evidence to be "plain error." In Syllabus Points 7 and 9 of *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), we held as follows:

> To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.

> Assuming that an error is "plain," the inquiry must proceed to its last step and a determination made as to whether it affects the substantial rights of the defendant. To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice.

5

Upon our review, we find no error in the admission of the contents of petitioner's purse as evidence. First, petitioner introduced evidence of her own drug use as part of her voluntary intoxication defense, so it certainly was not plain error for the circuit court to allow testimony that her purse was full of needles. Second, with respect to the insect-repellant bracelet, petitioner was able to cross-examine Deputy Gills as to the possibility that the bracelet was purchased at another time. In fact, petitioner introduced testimony from another witness, Tiffany Pannell, that petitioner could have bought the bracelet at a different time and from a different store because petitioner had given Pannell's children the same type of bracelet. Petitioner fails to show how the admission of this evidence was error, much less how it affected the outcome of the trial.

Fifth, petitioner argues that the circuit court failed to question the jury venire for possible bias or impartiality with respect to witness Andrew Bailey. During voir dire, the State pointed out to the circuit court that there were no questions posed to the panel about a potential relationship with Bailey, despite the fact that he was on the State's witness list. There was no objection from the defense. West Virginia Code § 56-6-16 provides as follows:

> No irregularity in any writ of venire facias, or in the drawing, summoning, or impaneling of jurors, shall be sufficient to set aside a verdict, unless objection specifically pointing out such irregularity was made before the swearing of the jury, or unless the party making the objection was injured by the irregularity.

After the State brought the issue to the circuit court's attention, there were no additional questions from the court or either party.

> [W]e have recognized that "where there is a recognized statutory or common law basis for disqualification of a juror, a party must during voir dire avail himself of the opportunity to ask such disqualifying questions. Otherwise the party may be deemed not to have exercised reasonable diligence to ascertain the disqualification." *State v. Bongalis,* 180 W.Va. at 591, 378 S.E.2d at 456.

> Further, under the ordinary diligence standard, it is not enough to show that the circuit court failed to ask the questions which likely would have revealed the disqualification. A party must ensure that the trial court examines the jury panel concerning a possible disqualification, or the party itself must ask the relevant questions.

*Proudfoot v. Dan's Marine Serv., Inc.,* 210 W.Va. 498, 504, 558 S.E.2d 298, 304 (2001).

At trial, petitioner failed to question any of the potential jurors about possible bias regarding Andrew Bailey. Moreover, on appeal, she fails to explain how such questioning would have led to the disqualification of any of the jurors. Therefore, petitioner's fifth assignment of error must be rejected.

Sixth, petitioner contends that she is entitled to a new trial as a result of the cumulative error by the circuit court. "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial,

his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syl. Pt. 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972). Because we have found no error by the circuit court with respect to petitioner's preceding five assignments of error, we must reject her claim of cumulative error.

Petitioner's final assignment of error is that the circuit court imposed a disproportionate sentence for her offenses. Petitioner does not dispute that she was at the scene of the crime, but asserts that she was not a participant in the commission of the crime and did not deserve a thirty-year prison sentence. As support, she points to Dr. Saar's testimony that she was in "survival mode" and did not have the capacity to appreciate the wrongfulness of her actions or to enter an agreement with her husband to rob the store. She argues that her husband was the "prime mover" in the crime, s*ee State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983), and that her actions in no way contributed to the furtherance of the robbery.

We do not agree that the circuit court imposed a disproportionate sentence. We have held that

> [u]nder *W.Va. Code,* 61-2-12 [1961], a person convicted of aggravated robbery "shall be confined in the penitentiary not less than ten years." This particular statute thus imposes a minimum, but not an expressly stated maximum, sentence of confinement for conviction of this offense. This Court and the federal courts have, though, held or recognized that the legislature, by not expressly fixing a maximum term, has impliedly authorized life imprisonment as the maximum penalty for aggravated robbery for the purpose of sentencing. *State v. Turley,* 177 W.Va. 69, 71, 350 S.E.2d 696, 699 (1986), and the cases cited therein. An indeterminate sentence for aggravated robbery is invalid. *State ex rel. Faircloth v. Catlett,* 165 W.Va. 179, 180, 267 S.E.2d 736, 737 (1980), and the cases cited at note 1. On the other hand, beyond the statutory minimum of ten years, the legislature has chosen not to deprive trial courts of discretion to determine the appropriate determinate term for life or for a specific number of years as the sentence for aggravated robbery. *State ex rel. Faircloth v. Catlett*, 165 W.Va. 179, 181, 267 S.E.2d 736, 737 (1980). *Accord, State v. Cooper,* 172 W.Va. 266, 270, 304 S.E.2d 851, 854-55 (1983).

*State v. Glover,* 177 W.Va. 650, 658, 355 S.E.2d 631, 639 (1987). The test to determine if a sentence is unconstitutionally disproportionate is two-pronged: "The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further." *Cooper,* 172 W.Va. at 272, 304 S.E.2d at 857. Second,

> [w]hen it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981):

In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

*Id.* In the present case, the evidence demonstrated that petitioner drove her armed husband to the Pop Shop, where he entered the store with a shotgun and demanded money. When he was shot in the process, petitioner drove to the front of the store, took money that he had dropped, and left. Accordingly, we cannot find that the sentence shocks the conscience.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 17, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

8