# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: E.K. and I.K.

No. 17-0388 (Hampshire County 16-JA-69 & 16-JA-70)

## MEMORANDUM DECISION

Petitioner Father J.K., by counsel Karen L. Garrett, appeals the Circuit Court of Hampshire County's February 3, 2017, order terminating his parental rights to E.K. and I.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joyce E. Stewart, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his improvement period, suspending his visitation with the children, finding that the DHHR made all reasonable efforts, terminating his parental rights, denying him post-termination visitation, and denying him the due process of law.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2015, the DHHR filed an abuse and neglect petition alleging that petitioner and E.K. and I.K.'s mother engaged in domestic violence in the children's presence and that the mother abused illegal substances. The children were removed from the home and the mother was not permitted to return to the home or contact the children. Petitioner was granted and completed a preadjudicatory improvement period. The mother's parental rights to the children were terminated on March 3, 2016, and the children were returned to petitioner's care. On June 29, 2016, the police were dispatched to petitioner's home in response to a report of domestic violence between petitioner and the mother. The mother told the police that she lived in petitioner's home. The DHHR took emergency custody of the children and filed an amended abuse and neglect petition against petitioner alleging that he and the mother engaged in domestic violence in the children's presence and that he knowingly allowed the mother to live in the home

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

and care for the children despite the termination of her parental rights. According to the amended petition, the children confirmed that the mother was living in the home, that petitioner told them "never to talk about [the mother] living there," and that the mother hid when service providers came to the home. Petitioner thereafter waived his right to a preliminary hearing.

In August of 2016, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations in the amended petition – specifically, that he allowed the mother to return to the home and care for the children and that he and the mother engaged in domestic violence in the children's presence. Following the adjudication, petitioner filed a motion requesting a post-adjudicatory improvement period, claiming that he allowed the mother to return to the home because he did not understand that the mother was not permitted contact with the children. The circuit court granted petitioner's motion and ordered the multidisciplinary team ("MDT") to meet and develop a family case plan.

In October of 2016, the circuit court held a status hearing wherein the DHHR reported that petitioner continued to have contact with the mother, failed to participate in services, attempted to influence a witness to offer beneficial and untruthful testimony, and reported to his doctor that he had a fifteen-year history of addiction to prescription medication. The DHHR then filed a motion to terminate petitioner's improvement period. In support of its motion, the DHHR provided the circuit court with copies of a photograph of petitioner and the mother taken in October of 2016, an online post wherein the mother attempted to sell the children's toys, and petitioner's medical records indicating his fifteen-year substance abuse history.

In December of 2016, the circuit court held a hearing on the DHHR's motion to revoke petitioner's improvement period. A DHHR caseworker testified that petitioner failed to attend a Batterer's Intervention Program ("BIP"), failed to comply with substance abuse services, and continued to have contact with the mother. Petitioner testified that, contrary to his medical records, he did not recall telling his doctor that he had a substance abuse problem. Petitioner also testified that he could not "make it" to all of his scheduled drug screens and missed the initial BIP session because he went to the wrong building. He denied having contact with the mother during the underlying proceedings, but admitted to having contact with her on the day the photograph was taken and testified that he was "just checking on her to make sure everything was okay." At the conclusion of the hearing, the circuit court revoked petitioner's improvement period.

In January of 2017, the circuit court held a dispositional hearing wherein a day report center worker testified that petitioner was referred to the agency for substance abuse services. The worker also testified that petitioner appeared for intake, refused to submit to drug screening, and denied having any substance abuse issues, despite having a Suboxone prescription. The worker further testified that the day report center cannot provide petitioner any Suboxone until he acknowledges his substance abuse issues. The circuit court then ordered petitioner to submit to drug screening during a brief court recess, at which time he tested positive for marijuana and Suboxone. A DHHR worker then testified that petitioner was initially provided with in-home parenting and life skills classes and was enrolled in the BIP, but was excused from the same because it conflicted with his work schedule. The worker also testified that, after the amended petition was filed, petitioner was again referred to the BIP, but failed to appear for his initial

2

session and was discharged by the provider. Finally, the worker testified that petitioner was referred to substance abuse counseling and drug screening but failed to comply with those services. Petitioner admitted to having continued contact with the mother despite the circuit court's order prohibiting such contact. Based on the evidence presented, the circuit court determined that petitioner and the mother were still in a relationship, that petitioner has had "months, if not years, to change the direction of his life," and that he refuses to "accept responsibility for anything." The circuit court found that petitioner tested positive for Suboxone and marijuana, but that petitioner denied that he has a substance abuse problem. The circuit court also found that there was no reasonable likelihood he could substantially correct the conditions of abuse and neglect and terminated his parental rights to the children, by order dated February 3, 2017. It is from that order that petitioner appeals.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner first argues that the circuit court erred in terminating his post-adjudicatory improvement period. Despite petitioner's claim that the circuit court "[failed] to approve the family case plan" and, therefore, failed to implement his improvement period, petitioner's motion for an improvement period was granted on September 22, 2016, and services were initiated at that time. It is clear from the record on appeal that petitioner was instructed regarding the initiation of services the same day his improvement period was granted and initial intake for services was scheduled. Petitioner acknowledges his failure to comply with services and his continued drug use. We find that petitioner's failures and drug abuse were appropriate considerations for the circuit court in terminating his improvement period.

---

[2]The parental rights of the children's parents were terminated below. According to the guardian ad litem, the children were placed in a foster home and the permanency plan is adoption into that home.

With regard to the termination of his improvement period, West Virginia Code § 49-4-610 sets forth when a circuit court may terminate an improvement period. Under West Virginia Code § 49-4-610(7), a circuit court is to terminate an improvement period "when the court finds that [a parent] has failed to fully participate in the terms of the improvement period." Additionally, "it is . . . within the court's discretion to terminate the improvement period . . . if the court is not satisfied that the [parent] is making the necessary progress." Syl. Pt. 2, in part, *In re Lacey P.*, 189 W.Va. 580, 433 S.E.2d 518 (1993).

In this case, petitioner clearly failed to fully participate with the services offered during his improvement period and acknowledged these failures. He admitted that he did not consistently comply with services throughout the proceedings, and he admits to continued drug abuse. For those reasons, we find no error in the circuit court's termination of petitioner's post-adjudicatory improvement period. Therefore, petitioner's first assignment of error lacks merit.

Petitioner next argues that the circuit court erred in suspending his visitation with the children after the termination of his improvement period. He contends that the MDT recommended continued visitation with the children before his improvement period was terminated. We disagree. Rule 15 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides, in part, that

> [i]f at any time the court orders a child removed from the custody of his or her parent(s) and placed in the custody of the [DHHR] or of some other responsible person, the court may make such provision for reasonable visitation . . . as is consistent with the child's well-being and best interests.

Rule 15 further requires that, "[i]n determining the appropriateness of granting visitation rights to the person seeking visitation, the court shall consider whether or not the granting of visitation would interfere with the child's case plan and the overall effect granting or denying visitation will have on the child's best interests." Despite previously granting petitioner supervised visitation with the children, the circuit court was presented with evidence that E.K. refused to attend scheduled visitation with petitioner, that petitioner maintained a relationship with the mother, failed to comply with services, and had a substance abuse problem he failed to acknowledge. As such, the circuit court properly considered the best interests of children in making its decision and did not abuse its discretion by suspending petitioner's visitation.

Petitioner's next assignment of error is that the circuit court erred in finding that the DHHR made reasonable efforts to preserve the family and to prevent the children's removal because the emergency situation detailed in the petition was not an emergency and the children were not in imminent danger. He contends that the emergency situation detailed in the petition occurred on June 30, 2016, but the petition was not filed until July 8, 2016. He also argues that the circuit court's finding of imminent danger was not supported by the record.

We find no error in the circuit court's finding that imminent danger to the children existed at the time they were removed from the home. Pursuant to West Virginia Code § 49-4-602(a)(1)(A)and (B),

[u]pon the filing of a petition, the court may order that the child alleged to be an abused or neglected child be delivered . . . into the care, custody, and control of the [DHHR] . . . if it finds that [t]here exists imminent danger to the physical well-being of the child and [t]here are no reasonably available alternatives to removal of the child.

In this case, although the domestic violence incident occurred in June of 2016, the DHHR was not made aware of the incident until July of 2016. Once the referral was received, the DHHR conducted an investigation and determined that the mother was living in the home, taking care of the children, and engaging in domestic violence with petitioner. The children also confirmed to the DHHR that they were instructed by petitioner to lie about the mother's presence in the home. Based on the DHHR's investigation, the circuit court properly found that the DHHR was not required to make reasonable efforts to preserve the family and prevent the children's removal due to the existence of imminent danger.

Petitioner next assigns error to the circuit court's termination of his parental rights to the children and argues that because the circuit court failed to file the family case plan, "there can be no disposition." We disagree. Petitioner admits in his brief that a family case plan was filed in October of 2016, but contends that the family case plan was for only one of the children. However, it is clear from the record on appeal that the family case plan referenced both children and the plans were to be identical. Moreover, petitioner did not object to the filing of the family case plan or request a revised family case plan prior to the dispositional proceedings. With regard to any procedural errors that occurred in these proceedings, we find that none were to the degree that substantially frustrated the overall proceedings to warrant reversal. *See In re Edward B.*, 210 W.Va. 621, 634, 558 S.E.2d 620, 633 (2001).

Further, West Virginia Code § 49-4-604(b)(6) provides that a circuit court is directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

In this case, the circuit court was presented with evidence that petitioner failed to comply with domestic violence and substance abuse services and continued to have contact with the mother. Given petitioner's complete lack of improvement during these proceedings, we find no error in the circuit court's termination order. The circuit court properly found that petitioner was not reasonably likely to substantially correct the conditions of abuse and neglect in the near future, and it is clear from the record on appeal that the children's welfare necessitated the termination of petitioner's parental rights. Accordingly, we find no error below.

Petitioner next argues that the circuit court erred in denying him post-termination visitation with the children. He contends that the circuit court deferred to the MDT and based its decision solely upon the recommendations of a psychologist "who only met with one child one

time." Upon our review, the Court finds this assignment of error to be without merit. We have previously held that

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). Petitioner has failed to provide evidence to contradict the circuit court's finding that continued visitation was not in the children's best interests. According to the record on appeal, at least one of the children refused to visit with petitioner, which defies his argument that the circuit court erred in denying him visitation due to a strong bond with the children. Further, petitioner continued to abuse substances and engage in a violent relationship with the mother. Accordingly, we find no error in the circuit court's denial of post-termination visitation with petitioner.

Finally, the Court finds no merit with regard to petitioner's argument that the circuit court denied him the due process of law because it relied "upon the inept and inadequate investigation and reports of the DHHR worker." We disagree. Petitioner stipulated to the very allegations he now complains are in error. Following an investigation and the filing of a petition by the DHHR, petitioner admitted that he allowed the mother to return to the home and care for the children, against the court's previous ruling, and that they engaged in domestic violence in the children's presence. As this Court explained in *State v. Crabtree,* 198 W.Va. 620, 482 S.E.2d 605 (1996):

> 'Invited error' is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is . . . to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences.

*Id.* at 627, 482 S.E.2d at 612. It is clear from the record on appeal that petitioner did not object to the DHHR's investigation or the filing of the petition below. Petitioner was represented by counsel at every stage of the underlying proceedings and stipulated to the allegations as alleged in the petition filed by the DHHR. As such, we find that petitioner invited the error about which he now complains. Therefore, given the particular circumstances present in this matter, we find that petitioner waived this issue for appellate review.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 3, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  October 23, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker